# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-3743

_____

United States of America,     *
                          *

          Appellee,     *

                          *     Appeal from the United States

     v.                    *     District Court for the

                          *     Western District of Missouri.

Louis D. Tarantola,           *

                          *         [PUBLISHED]

          Appellant.     *

_____

Submitted: March 11, 2003
Filed: June 11, 2003

_____

Before HANSEN,[1] Chief Judge, RILEY and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

     Louis Tarantola was charged and convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1). The district court[2]

_____

     [1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

     [2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

sentenced Tarantola to 293 months of imprisonment. On appeal, Tarantola argues that the district court erred in denying his motion to suppress evidence, erred in submitting a particular instruction to the jury, and abused its discretion in granting the Government's motion for an upward departure. For the reasons stated below, we affirm the judgment of and the sentence imposed by the district court.

I.

Police officers responded to an anonymous 911 telephone call that an armed man inside the Westport Laundromat in Kansas City, Missouri, was threatening to kill his mother and brother. When the officers arrived at the scene to investigate, they observed through a window and glass front door that the lights inside the building were on and that a man was inside buffing the floors. One of the officers knocked on the locked front door to attract his attention. The man heard the knock at the door and turned to face the officers. Based on a recent, previous interaction with the defendant, one of the investigating officers then recognized the man as Tarantola. After Tarantola had turned and started walking towards the door, the same officer observed a semi-automatic pistol in a holster on Tarantola's belt. Because the officer knew of Tarantola's prior felony convictions, he knew that Tarantola could not legally possess the firearm. After Tarantola opened the door, the officers placed him under arrest for being a felon in possession of a firearm.

Tarantola filed a motion to suppress the gun as the product of an illegal investigatory stop. Tarantola argued that his turning around and approaching the laundromat door in response to the knock constituted an illegal seizure. The district court denied the motion, concluding that the simple act of knocking on the door did not restrain the defendant's liberty and that no constitutional violation occurred. In reviewing the denial of Tarantola's motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions de novo. See United States

2

v. Ruiz-Estrada, 312 F.3d 398, 404 (8th Cir. 2002), cert. denied, 123 S. Ct. 1766 (2003).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Tarantola's position that a person is "seized" for Fourth Amendment purposes whenever an officer interrupts what that person was otherwise doing is absurd; it is well established that not all encounters between police officers and the citizenry fall within the ambit of the Fourth Amendment, see United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001). It cannot seriously be disputed that the officers had a right to enter the laundromat to investigate the 911 telephone call. See, e.g., United States v. Cunningham, 133 F.3d 1070, 1072 (8th Cir.) (stating that officers had a right to enter apartment in response to 911 call that person within apartment was being held against her will), cert. denied, 523 U.S. 1131 (1998). Simply knocking on a door to attract the attention of an employee who might grant the officers access to the premises to further investigate a potentially serious crime does not implicate any Fourth Amendment interest, does not amount to a seizure, and thus falls outside the ambit of the Fourth Amendment. Of course, the officers "seized" Tarantola when they arrested him, but the arrest was supported by probable cause engendered by the officer's plain view observation of the holstered pistol coupled with the officer's knowledge that Tarantola was a felon who could not legally possess such a weapon. Accordingly, we hold that the district court did not err in denying Tarantola's motion to suppress evidence.

II.

Tarantola also argues that Jury Instruction No. 17, which listed the elements of the offense, amounted to a constructive amendment of the indictment. Tarantola's argument is poorly crafted, wholly without merit, and deserves rejection without further discussion.

III.

Tarantola also argues that the district court abused its discretion in granting the Government's motion for an upward departure. Tarantola's total offense level was 33. His criminal history category was V. The Guidelines called for a sentence between 210 and 262 months of imprisonment. See U.S. Sentencing Guidelines Manual Ch.5, Pt.A (2001). In departing upward, the district court, relying on U.S.S.G. § 4A1.3, concluded that Tarantola's criminal history category did not adequately reflect the seriousness of his past criminal conduct or the likelihood that he would commit other crimes and sentenced Tarantola to 293 months of imprisonment. The district court concluded that Tarantola's criminal history more closely resembled a criminal history category VI and referenced that guideline range in fashioning the sentence. Prior to the enactment of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21, 117 Stat. 650 (2003), we would have reviewed the district court's upward departure for an abuse of discretion. See, e.g., United States v. Kingston, 249 F.3d 740, 742 (8th Cir. 2001). Section 401(d) of the PROTECT Act, however, requires that we review de novo whether the district court has complied with the Act's requirement that the reasons for departure must be stated with specificity in the written order of judgment and commitment and whether the district's court departure was based on an impermissible ground. Because we would affirm the district court's upward departure in this case under either standard of review, we may assume without deciding that there is no legal barrier preventing Congress from changing the standard of review and then applying that new standard to a pending appeal.

The district court listed a number of factors supporting its conclusion that Tarantola's criminal history category underrepresented his actual criminal history. First, the district court reasoned, two convictions which took place fifteen years prior to the instant offense were not included in Tarantola's criminal history score. In 1974, Tarantola was convicted of first degree robbery after he used a .410 caliber shotgun

4

to rob a Waid's restaurant. In that same year, Tarantola was convicted of assault with intent to kill after he shot a parking garage attendant. Second, the district court noted, the violent nature of the offenses which had been used in calculating his criminal history score–murder and two counts of armed bank robbery–justified the departure. Third, the district court noted that Tarantola had spent two-thirds of his adult life in prison and that based on his pattern of criminality, but for the time he spent in prison, Tarantola certainly would have had a criminal history category VI. Fourth, the district court reasoned, Tarantola had displayed violent and anti-social conduct even while incarcerated. While in prison, Tarantola was cited for numerous violations, including: escape, possession of narcotics paraphernalia, refusal to obey orders, possession of a controlled substance, introduction of a gun or ammunition, threatening staff, attempted assault, and destruction of government property.

The district court also concluded that there is a great likelihood that the defendant will commit future crimes, noting that Tarantola is an "incorrigible recidivist" and that "[h]e poses a significant threat to the safety of the community." (Sent. Tr. at 19.) The district court found that certain comments and threats Tarantola made during these proceedings supported that view. Tarantola sent a letter to the district court. On the envelope, Tarantola had drawn a picture of an airplane marked "Con Air" flying into the federal building. (Appellee's Add. at 1.) In the letter itself, Tarantola remarked that he hoped that a terrorist "drives a big jet right into that new pig building! YEAH!" (Appellee's Add. at 2.) During the sentencing hearing, after the Assistant United States Attorney ("AUSA") read this portion of the letter to the court, Tarantola exclaimed, "yeah." (Sent. Tr. at 13.) During an interview with the Probation Office conducted for the purpose of completing a Presentence Investigation Report, Tarantola made other intemperate comments. He stated that if he ever caught the AUSA "on the streets, [he would] bust his ass." (Appellee's Add. at 3.) He also described a situation in which he would like to follow the AUSA from his country club, approach his vehicle, and "blow his f***ing head off." (Id.) During this interview, the defendant also stated that "he likes to shoot people." (Id. at 4.)

Whether these remarks were idle or actual threats, the district court concluded that they "demonstrate[d] a total disregard for the laws of this country. And . . . where that condition exists . . . future disobedience of those laws can be predicted with some degree of accuracy." (Sent. Tr. at 20.) Tarantola reinforced this conclusion at the sentencing hearing. Tarantola stated that he would like to go out and shoot the AUSA, but could not because he had commitments to his wife and daughter. (Sent. Tr. at 24.) He also stated that "as far as liking to shoot people, yes, I do." (Sent. Tr. at 27.)

After careful review, we conclude that the district court relied on permissible bases of departure and that its findings of fact are not clearly erroneous and are more than sufficient to justify the upward departure. See United States v. Amsden, 213 F.3d 1014, 1016 (8th Cir. 2000) (concluding that the mailing of threatening letters could be a basis for denial of acceptance-of-responsibility reduction and used to justify upward departure pursuant to § 4A1.3); United States v. Herr, 202 F.3d 1014, 1016-17 (8th Cir. 2000) (holding that the district court did not abuse its discretion in departing upward where defendant's conduct showed disrespect for the law and lenity in sentencing previously had not been effective); United States v. Poe, 96 F.3d 333, 334 (8th Cir. 1996) (holding that the district court did not abuse its discretion in departing upward pursuant to § 4A1.3 where the defendant displayed pattern of criminal behavior, including mailing threatening letters to the authorities after conviction but prior to sentencing); United States v. Washington, 109 F.3d 459, 462 (8th Cir. 1997) (holding that district court did not abuse its discretion in departing upward pursuant to § 4A1.3 where the defendant had several convictions more than 15 years old not used in calculating his criminal history and where the defendant's pattern of continuous criminality revealed that it was only the fact that defendant had been incarcerated for half of his life that had kept his criminal history score lower than it otherwise would have been); United States v. Cook, 972 F.2d 218, 222 (8th Cir. 1992) (holding that the district court did not abuse its discretion in departing upward where the defendant was obviously incorrigible, had a history of violence and

weapons use, and had made threatening statements to his probation officer), <u>cert. denied</u>, 506 U.S. 1058 (1993). Because the district court sentenced Tarantola within the range corresponding to criminal history category VI, a methodology § 4A1.3 specifically recommends, we also conclude that the extent of the departure was reasonable.

IV.

For the reasons discussed above, the district court is affirmed in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.