UNITED STATES of America,
Appellant,

v.

Lisa Lerma MARINE, Appellee.

No. 02–3317.

United States Court of Appeals,
Sixth Circuit.

April 8, 2004.

Louis M. Fischer, Steven L. Lane, U.S. Department of Justice, Washington, DC, for Plaintiff–Appellant.

Robert L. Rascia, Rascia & Rascia, Chicago, IL, for Defendant–Appellee.

Before: SUHRHEINRICH, CLAY and SUTTON, Circuit Judges.

CLAY, Circuit Judge.

The government appeals the sentence imposed on Defendant Lisa Lerma Marine, who pled guilty in the United States District Court for the Northern District of Ohio to one count of conspiracy to distribute more than 15, but less than 50, kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The government contends that the district court erred in departing downward from the applicable sentencing guideline range based on Marine's family responsibilities. Because the district court's downward departure was

justified by the facts of the case, we **AFFIRM** the sentence.

## I

Defendant Lisa Lerma Marine was one of 35 defendants, including her husband, Randy Marine, and six other family members charged in a drug distribution conspiracy. She pled guilty in the United States District Court for the Northern District of Ohio to one count of conspiracy to distribute more than 15, but less than 50, kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. According to Marine's plea agreement, the government agreed not to oppose the application of U.S. Sentencing Guidelines Manual § 5C1.2, which permits the court to sentence a defendant without regard to the statutory minimum sentence set forth in § 841(a)(1), so long as the defendant satisfies certain criteria. The presentence report indicated an offense level of 34, a two level reduction pursuant to Guidelines § 5C1.2, and a three level reduction pursuant to Guidelines § 3E1.1(a) and (b) (acceptance of responsibility). The resulting offense level of 29 carried a sentencing guideline range of 87 to 108 months of incarceration. The court denied Marine's request for a downward departure for her alleged minimal role in the conspiracy.

At issue on appeal is Marine's request, and receipt of, a ten level downward departure under Guidelines §§ 5H1.6 and 5K2.0 based on her family circumstances. The following evidence of her family circumstances was presented to the district court: (1) Marine has three children, ages 11, 14 and 17; (2) the 17 year-old daughter has a nine-month old child for whom Marine has cared, allowing the daughter to complete her high school education; (3) Marine provides economic support for her children and grandchild; (4) her husband, who also was involved in the drug conspiracy, was sentenced to 57 months in prison; and (5) there are no family members available to take care of her children. After conducting legal research and thoughtfully deliberating over the matter, the district court granted the ten level departure, reasoning as follows:

It is clear that the mere existence of parental responsibilities is not extraordinary. It is also clear that there are myriads of single parent homes with three or four children in them, so that in and of itself is not extraordinary.

It is also evident that many families cannot rely on the possibility of family or close friends rather than strangers assuming custody of the children, and in many instances, like this case, there is also the absence of criminal history. It is where that rare case comes along where several of these instances or conditions coalesce that serious consideration of downward departure should exist.

It's been represented to me in this court that the defendant's mother cannot or will not care for the children and that there is no one else able to do so. Their father was sentenced a week ago to 57 months in prison. There are three children at home, 17 years, 11 and seven, the oldest of whom has a nine month old child.

Lisa [Marine] has no criminal history points at all, has been working third shirt [sic] at a bakery, and so we're faced with four young lives which are impacted directly by this case, by this crime, a crime not to be condoned but in which this defendant apparently profited little but played a significant role.

\* \* \* \* \* \*

It is my conclusion that the circumstances coalescing in this case do, in fact, justify a downward departure, not

because of the defendant but because of the children in this case and the responsibility of the defendant in caring for those children.

(J.A. 157–59.)

Because the court departed downwardly 10 levels to level 19, Marine was subject to a Guidelines range of 30 to 37 months in prison. The court then sentenced Marine to 30 months of prison. Thereafter, Marine requested, and was granted, permission to participate in The Intensive Confinement Center Program (Boot Camp), as set forth in 18 U.S.C. § 4046. The government objected to the departure, and this appeal followed.

## II

■ Section 401(d)(2) of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650, 670 (Apr. 30, 2003) changed the standard of review for decisions to depart from the Sentencing Guidelines. *United States v. Camejo*, 333 F.3d 669, 675 (6th Cir.2003). Prior to the PROTECT Act, this Court reviewed the decision to depart for an abuse of discretion. *Id.* (following *United States v. Tarantola*, 332 F.3d 498, 500 (8th Cir.2003)). Due to the PROTECT Act, however, the decision to depart from the Sentencing Guidelines is reviewed *de novo. See* 18 U.S.C. § 3742(e) (providing that whether a district court's decision to depart outside the applicable guideline range is justified by the facts of the case is to be reviewed *de novo* ).

What is less clear is whether the PROTECT Act applies to cases such as this that were pending on appeal as of the PROTECT Act's effective date. A panel of this Court declined to address this issue because it would have affirmed the district court's departure under either standard of review. *Camejo*, 333 F.3d at 675 (following *Tarantola*, 332 F.3d at 500). It appears, however, that the new standard would apply to Marine's appeal because the new standard of review effected only a procedural change to the law, thereby obviating any concerns about retroactive application of the new standard. *See United States v. Andrews*, 353 F.3d 1154, 1155 n. 2 (10th Cir.2003); *United States v. Bell*, 351 F.3d 672, 675 (5th Cir.2003); *United States v. Stockton*, 349 F.3d 755, 764 n. 4 (4th Cir.2003); *United States v. Mallon*, 345 F.3d 943, 946–47 (7th Cir.2003); *United States v. Frazier*, 340 F.3d 5, 14 (1st Cir. 2003); *United States v. Hutman*, 339 F.3d 773, 775 (8th Cir.2003). We need not resolve the issue, because we hold that the district court's downward departure withstands the more rigorous *de novo* review.

■ A sentencing court is required to impose a sentence within the applicable Sentencing Guidelines range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). "To determine whether a circumstance was adequately taken into consideration by the Commission, Congress instructed courts to 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" *Koon v. United States*, 518 U.S. 81, 92–93, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)). According to the Guidelines Manual, the Sentencing Commission did not adequately take into account cases that are "unusual." *Id.* at 93 (quoting 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b)). The Introduction to the Sentencing Guidelines explains:

The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Guidelines Manual ch. 1, pt. A, intro. cmt. 4(b) (2002).

The Sentencing Guidelines list certain facts that never can be bases for departure, such as race, sex, national origin, creed, religion and socio-economic status. *Id.* § 5H1.10. Other factors are not prohibited, but are discouraged. Discouraged factors are those "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." *Id.* ch. 5, pt. H, intro. comment. One example of a discouraged factor is "family ties and responsibilities." *Id.* § 5H1.6. According to the Commission, such a factor should be relied upon to depart from a mandatory minimum only in "exceptional cases." *Id.* ch. 5, pt. H, intro. comment. Thus, the Supreme Court has held that "[i]f the special factor is a discouraged factor, . . . the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon*, 518 U.S. at 96.

To determine whether a case is exceptional, the district court must make "a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Id.* at 98. Whether a discouraged sentencing departure factor. such as the defendant's family responsibilities, "nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases." *Id.* The Supreme Court has opined that, because district courts have an institutional advantage over appellate courts in determining the propriety of departures, they have a "special competence" to determine what is ordinary or unusual in a particular case. *Id.* at 99 (internal quotation marks and citation omitted). For this reason, Congress originally directed the courts of appeals to "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e)(4) (2002). As noted above, however, Congress recently amended § 3742(e), eliminating an appellate court's deference to the district court's "application of the guidelines to the facts" with respect to departures from the applicable Sentencing Guidelines range. 18 U.S.C. § 3742(e) (2003).

The leading case in the Sixth Circuit on the propriety of a downward departure for family responsibilities is *United States v. Reed*, 264 F.3d 640 (6th Cir.2001). There, the district court departed downward 13 levels to account for the defendant's family circumstances. *Id.* at 653. The defendant had assumed a significant role in the development and upbringing of her five nieces and nephews, four of whom were under the age of 18. *Id.* She helped ensure that the children ate properly and did their homework and provided them with emotional support. *Id.* Because the defendant's sister allegedly was extremely immature and dysfunctional, a family assessment report concluded that defendant's imprisonment likely would result in the family falling apart and the younger children being sent to foster care. *Id.* In departing downward, the district court found that the defendant was essentially the children's surrogate parent, providing

them "invaluable and incalculable emotional and financial support." *Id.* at 654.

The *Reed* Court began its analysis by noting that it "has generally not approved of downward departures for family responsibilities based on a parent's obligation to a child." *Id.* (citing, among others, *United States v. Brewer*, 899 F.2d 503, 508–09 (6th Cir.1990) (reversing district court's downward departure for two married mothers convicted of embezzlement because mothers failed to explain how their family circumstances involving young children distinguished them from other embezzlers who have family responsibilities)). The Court further noted that "[o]ther circuits have been similarly reluctant to find that even a single parent's responsibility for a child was a family circumstance so exceptional as to merit a sentencing departure." *Id.* (citations omitted). The Court then held as follows:

> In light of this and other circuits' reluctance to permit downward departures for single parents with young children, even for those who provide financial and emotional support for their children, and even when the children are likely to be placed in foster care pending their parent's incarceration, we do not believe that [the defendant] has presented any evidence to demonstrate that her family circumstances are exceptional.

*Id.* at 655. Applying the now-defunct, but highly-deferential abuse of discretion standard, the Court held that the district court had abused its discretion in departing downward. *Id.*

We hold that Marine's situation is distinguishable from the defendant's situation in *Reed* in that Marine is the biological mother of the children at issue, whereas the defendant in *Reed* was not a custodial caretaker; she was an aunt. *Reed,* 264 F.3d at 655. In addition, unlike the defendant in *Reed,* Marine lives with her children and provides financial support for them. *Id.* There also is no evidence in the record that Marine regularly has taken extended vacations away from her children, a fact that severely undermined the district court's decision to depart downward in *Reed. Id.* Thus, Marine's family ties are far more significant than those at issue in the *Reed* case and, additionally, the combination of family circumstances suggests that her incarceration would impose a far more onerous burden on those for whom she cares.

The district court below noted generally that the existence of parental responsibilities is not extraordinary, nor are single parent homes, or the fact that many families cannot rely on family members or close friends to assume custody of their children. Taken individually, any one of these family circumstances is not extraordinary. *See also Brewer,* 899 F.2d at 508 ("Unfortunately, it is not uncommon for innocent young family members, including children to suffer as a result of a parent's incarceration.") (internal quotation marks. punctuation and citation omitted). The court found in Marine's case, however, that all of these conditions existed simultaneously; they "coalesced" to render her situation extraordinary: (1) she takes care of her own three biological children aged 17, 11 and seven,[1] and her infant granddaughter; (2) she is effectively a single parent because her husband was sentenced to almost five years in prison; *and* (3) there are no family or friends to care for her children, thereby rendering it likely that they would end up in foster care.

---

1. As pointed out by the dissent, the actual age of Marine's children at the time of her sentencing appears to have been 17, 14 and 11.

In essence, the district court found Marine to be "irreplaceable," a circumstance that other courts have found justifies a downward departure based on family ties. *See United States v. Leon,* 341 F.3d 928, 931–33 (9th Cir.2003) (observing that "[p]ermissible downward departures generally involve situations where the defendant is an *irreplaceable* caretaker of children, elderly, and/or seriously ill family members, and the extent of the departure appropriately serves to protect those family members from the impacts of the defendant's prolonged incarceration"; affirming downward departure under *de novo* standard because of the defendant's indispensable role in caring for his wife) (emphasis in original; citations omitted); *United States v. Pereira,* 272 F.3d 76, 80–83 (1st Cir.2001) (noting that a district court must find that defendant is "irreplaceable" before granting downward departure under Guidelines based on discouraged factor of family obligations) (citations omitted). We agree with the district court that the extraordinary facts of this case showed Marine to be an irreplaceable caretaker of her children. Accordingly, the district court's downward departure based on Marine's family ties and responsibilities was justified. 18 U.S.C. § 3742(e).

While Judge Suhrheinrich's dissent raises several forceful questions about our disposition of this case, they are not without answers. For one, to say that a downward departure in this area requires extraordinary circumstances, as we agree, is not to say that those circumstances may never exist. They can, and they do in this case. For another, any departure in this area is susceptible to a divide-and-conquer response in which each individual factor is open to criticism as a ground for departure by itself. The point here, as the district court correctly recognized, is that this aggregation of circumstances presents the rare instance where the constellation of pertinent factors warrants a departure. For still another reason, the case law supporting this outcome is not as anemic as the dissent suggests. *See e.g., United States v. Aguirre,* 214 F.3d 1122 (9th Cir. 2000) (affirming district court's downward departure for defendant whose incarceration would leave her eight year-old without a custodial parent); *United States v. Gauvin,* 173 F.3d 798 (10th Cir.1999) (affirming district court's downward departure for defendant who was primary supporter of four young children); *United States v. Johnson,* 964 F.2d 124 (2d Cir.1992) (affirming district court's downward departure for defendant who was solely responsible for raising her three young children–including an infant–and the young child of her institutionalized daughter); *United States v. Alba,* 933 F.2d 1117 (2d Cir.1991) (affirming district court's downward departure for defendant who had responsibility for two daughters–four and eleven years in age–a disabled father and a paternal grandmother).

The dissent also creates the impression that the our holding today runs contrary to case law in this circuit. All of the cases cited by the dissent, however, are manifestly distinguishable on their facts or otherwise consistent with our disposition of this case. First, Marine's family ties and responsibilities are far more compelling than those of the defendant in *Reed, supra. See* discussion, *supra.*

Second, the opinion in *United States v. Calhoun,* 49 F.3d 231 (6th Cir.1995) fails to indicate whether the defendant in that case was the sole custodian of the child at issue or whether there was another potential family member who was willing and able to care for the child. In Marine's case. these facts were critical to the district court's downward departure.

Third, the two defendants in *United States v. Brewer*, 899 F.2d 503 (6th Cir. 1990) had "stable family relationships" and their spouses were "gainfully employed." *Id.* at 508. Thus, there was an alternative source of support and care for the defendants' children. Marine's situation is not at all comparable.

Fourth, the opinion in *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989) fails to indicate whether the defendant in that case was the sole custodian of the children at issue or whether there was another potential family member who was willing and able to care for them. In fact, there is some suggestion that there may have been another caretaker available. At sentencing, the defendant asked for a sentence reduction because she "really need[ed] *to help* take care of [her] kids." *Id.* at 737 (emphasis added). In addition, the district court refused to depart downward because the defendant had involved one of her children in her criminal activity, the distribution of drugs. This fact supported the court's finding that the development of her children might be facilitated by their removal from her direct influence. *Id.* at 739. There were no such findings in Marine's case.

Last, the opinions in *United States v. Tocco*, 200 F.3d 401 (6th Cir.2000) (*"Tocco I"*) and *United States v. Tocco*, 306 F.3d 279 (6th Cir.2002) (*"Tocco II"*) offer little direction regarding the disposition of Marine's case. *Tocco I* reached no conclusion as to the propriety of a downward departure in that case, instead instructing the district court on remand to examine the defendant's personal involvement in the care of his wife and family and to consider whether his wife "ha[d] alternative sources of support other than her husband." *Tocco I*, 200 F.3d at 435–36. Arguably, this language suggests that a district court should look to the existence of alternate

sources of childcare for a defendant like Marine who is facing incarceration. This is exactly what the district court did in Marine's case. On remand after *Tocco I*, the district court found as a factual matter that a departure based on the defendant's wife's health would not be appropriate. *Tocco II*, 306 F.3d at 294–95. This Court never reviewed the substance of that finding on appeal. *Id.* at 295. Thus, *Tocco II* has nothing at all to say on the issue of downward departures based on family ties and responsibilities.

## III

For the foregoing reasons, the district court's sentence imposed on Defendant Lisa Lerma Marine is hereby **AFFIRMED.**

SUHRHEINRICH, Circuit Judge, dissenting.

Because the facts of this case do not support a downward departure for family ties and responsibilities under the clear rule of the Guideline and this Circuit's precedent, I DISSENT.

### I.

The Guideline clearly makes departure for "family ties and responsibilities" a discouraged factor. U.S.S.G. § 5H1.6. It is only appropriate in "exceptional cases" and if "present to an exceptional degree." U.S.S.G. § 5K2.0(a)(4) and cmt. (3)(C). Given this explicit direction, this Circuit has consistently refused to grant a downward departure based on a parent's obligation to a child because there is nothing extraordinary about such obligations. *See United States v. Reed*, 264 F.3d 640 (6th Cir.2001) (reversing district court's downward departure to the aunt of five children who contributed significantly to the development and upbringing of the children); *United States v. Calhoun*, 49 F.3d 231, 237

(6th Cir.1995) (affirming district court's refusal to depart downward for mother who was sentenced to 87 months in prison because the fact that defendant's fourteen-month-old "infant may suffer does not give rise to an extraordinary circumstance that should be reflected in sentencing"); *United States v. Brewer*, 899 F.2d 503, 508–09 (6th Cir.1990) (reversing district court's downward departure for two married mothers convicted of embezzlement because mothers failed to explain how their family circumstances involving young children distinguished them from other embezzlers who have family responsibilities); *United States v. Sailes*, 872 F.2d 735, 739 (6th Cir.1989) (affirming district court's refusal to depart downward for mother of seven children who was convicted of drug crime and sentenced to 45 months in prison).

This Court has never actually upheld a district court's downward departure for family ties and responsibilities.[1] The only time this Court has even entertained the possibility that extraordinary family circumstances could amount to an exceptional case warranting a departure is when the defendant is *personally required* to take care of a seriously ill spouse or family member. *United States v. Tocco*, 200 F.3d 401, 435–36 (6th Cir.2000). In *Tocco*, the district court granted a downward departure four levels for overwhelming community service, four levels for age and debilitating health and two levels based on Tocco's family ties, namely his wife's health, for a total departure of ten levels. With regard to family ties, the district

court found that Tocco needed to be with his wife, who was ill with cancer and emphysema and had recently undergone surgery. Tocco and his wife had eight children, all of whom were successful and supportive. The Government appealed, arguing that the district court erred in departing downward ten levels.

This Court stated that family circumstances may justify a departure only in exceptional cases and that "usually, this factor is taken into account when a defendant *personally* is required to take care of a seriously ill spouse or family member." *Id.* at 435. In so stating, we noted with approval the discussion regarding the type of family circumstances necessary for such a departure found in *United States v. Haversat*, 22 F.3d 790 (8th Cir.1994). *See Tocco I*, 200 F.3d at 435. In *Haversat*, the district court granted a five-level downward departure based on four factors, including exceptional family circumstances. *Haversat*, 22 F.3d at 796–98. The defendant's wife had a serious psychological illness, which had potentially life threatening effects, and the defendant was an "irreplaceable" part of the treating physicians treatment plan for her.[2] *Haversat*, 22 F.3d at 797.

The *Tocco* Court ultimately remanded the case to the district court to determine specifically the extent of the defendant's personal involvement in his wife's care and whether his wife had alternate sources of support. *Tocco I*, 200 F.3d at 435–36. The Court noted the fact that Tocco and his wife had eight grown children, seven of whom lived in the area and one of whom

---

1. In *United States v. McKelvey*, 7 F.3d 236, 1993 WL 339704 (6th Cir. Sep.01, 1993) a downward departure was granted based on a totality of circumstances including the defendant's age, his health and his family responsibilities, which included caring for two ill adults and a minor.

2. The Eighth Circuit found that three of the four bases for departure were impermissible and remanded the case to the district court because the family circumstances, although a permissible basis for departure, did not justify the magnitude of the departure. *Haversat*, 22 F.3d at 798.

was a doctor. *Id.* at 436. On remand, the district court refused to grant a downward departure, finding that the health needs of the defendant's wife were not so extraordinary as to warrant a departure. *See United States v. Tocco*, 306 F.3d 279, 294 (6th Cir.2002). On a second appeal, we found the district court's denial of the departure not cognizable. *Id.* at 295.

## II.

There are no facts in this case to support a downward departure under this case law. Marine presented evidence that she had three minor children, all students, that she and her husband were both subject to incarceration, leaving the children with no custodial parent and a total loss of family financial support, that she had no extended family support available, and that incarceration would result in the loss of the care provider for her infant granddaughter. In granting the departure, the district court identified three factors as warranting a downward departure. First, Marine cares for her three biological children, aged 17, 14 and 11, as well as her infant granddaughter. Second, Marine's husband was sentenced to almost five years in prison, making her effectively a single parent. Third, Marine has no family or friends with whom she can leave her children, making it likely that they would be placed in foster care.

Both the district court and the majority realize that each of these factors is not extraordinary. Maj. Op. at 311. In fact, these are the identical trials facing virtually every defendant-parent who is sentenced under the Guidelines. The plain fact is that innocent young children suffer when a parent is incarcerated. Nevertheless, the Sentencing Commission decided not to make parental status a factor for

downward departure. To get around this obvious impediment, the majority agrees with the district court's finding that "in Marine's case . . . all of these conditions existed simultaneously; they 'coalesced' to render her situation extraordinary." *Id.* In short, the majority agrees with the "district court that the extraordinary facts of this case showed Marine to be an irreplaceable caretaker of her children." *Id.* at 312.

I, for one, am quite at a loss to see how the factors listed by the majority: "(1) [Marine] takes care of her own three biological children aged 17, 11 and seven [sic],[3] and her infant granddaughter; (2) she is effectively a single parent because her husband was sentenced to almost five years in prison; *and* (3) there are no family or friends to care for her children, thereby rendering it likely that they would end up in foster care" are either extraordinary or make Marine irreplaceable. Maj. Op. at 311–312. The coalescing of these factors cannot be extraordinary since it is impossible to view them independently of one another. Indeed, parenthood is inescapably joined to the existence of children. Thus, factor number two cannot exist separately from factor number one. Additionally, the threat of foster care cannot possibly exist if one does not have children, making factor number three dependant on factor number one as well. Furthermore, in most cases in which foster care is a threat, the defendant will be a single parent, uniting all three circumstances. If this is extraordinary, any single parent sentenced to prison would be entitled to a downward departure for family ties and circumstances simply because a child or children would need foster care.

I am unaware of any authority, however, that supports the proposition that foster care is extraordinary. There is nothing

---

**3.** The ages of the children were 17, 14, and 11.

intrinsically evil in foster care, especially when contrasted with the reality that the children of criminal parents otherwise live in a criminal environment, as in this case. In fact, over half a million children are in foster care every year. The possibility of foster care cannot be so extraordinary that it would cause a case to fall outside of the heartland of factors considered by the Sentencing Commission when the Sentencing Guidelines were drafted. It is not for the court to decide that foster care is a greater evil for children than residing in the custody of delinquent and criminal minded parents.

Thus the only possible remaining "extraordinary" factor is the number of children involved. Again, case law is against departure on this ground. In *United States v. Sailes,* 872 F.2d 735 (6th Cir. 1989), we upheld the district court's denial of a downward departure to a mother of seven. In *Sailes,* a case similar to the instant case, Mrs. Sailes aided and abetted her eighteen-year-old son, her eldest child, in his drug selling activities. The Court denied Mrs. Sailes' request for a downward departure so that she could care for her six minor children. *Id.* at 739. In contrast, Marine is the mother of only three children, none of whom is very young.

Furthermore, like Mrs. Sailes, Marine is not an exemplary mother. She engaged in drug trafficking with her husband and numerous relatives, thereby exposing her children to criminal activity and the threat of having both of their parents incarcerated. As in *Sailes,* there is no evidence to suppose that the children would suffer from a separation from their mother, in fact they might even prosper.

Other circuits have similarly found circumstances like Marine's to be unextraordinary. *See United States v. Sweeting,* 213 F.3d 95 (3d Cir.2000) (holding that the district court erred in granting a downward departure based on extraordinary family circumstances to a single mother of five children, one of whom had a substantial neurological impairment); *United States v. Headley,* 923 F.2d 1079 (3d Cir. 1991) (holding that the district court did not err in denying a downward departure to a single mother of five minor children); *United States v. Brand,* 907 F.2d 31 (4th Cir.1990) (holding that the district court erred in granting a downward departure to the sole custodial parent of two minor children, ages seven and one and one-half, when the mother was separated from her husband and the children would have to be placed in foster care).

A sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children. It is apparent that in many cases the other parent may be unable or unwilling to care for the children, and that the children will have to live with relatives, friends, or even in foster homes.... '[The defendant] has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts spousal and parental relationships....'

*Id.* at 33 (quoting *United States v. Daly,* 883 F.2d 313, 319 (4th Cir.1989)).

Additionally, the majority finds that the facts of this case show Marine to be an irreplaceable caretaker of her children, but the majority does not explain why this is so. The word "irreplaceable" means impossible to replace, not merely difficult. There is no evidence to suggest that Marine is impossible to replace. I agree with the majority that other courts have found a downward departure for family ties justified when the defendant is "irreplaceable." Maj. Op. at 312. However, even the cases cited by the majority that support this

principle do not support the finding that Marine is "irreplaceable."

In *United States v. Leon*, 341 F.3d 928 (9th Cir.2003), which the majority cites, the court granted a downward departure based upon Mrs. Leon's poor emotional and physical health in conjunction with a psychologist's report that "Mrs. Leon would be at risk of committing suicide if she were to lose her husband due to death or incarceration." *Id.* at 932. The gravity of the consequences to Mrs. Leon, in the event that she committed suicide, made the family circumstances in that case extraordinary and the defendant irreplaceable. No similarly grave circumstances exist here.

Interestingly, the majority also cites *United States v. Pereira*, 272 F.3d 76 (1st Cir.2001), in support of the proposition that downward departures are appropriate when the defendant is irreplaceable. In *Pereira*, the district court granted a downward departure based upon the extensive care that the defendant provided to his elderly and disabled parents. In reversing the district court, the First Circuit engaged in a four page analysis of the circumstances necessary for downward departure. *Id.* at 80–83. After citing a litany of cases in which the district courts' grants of downward departures were reversed, the Court stated "[c]onsidering the immense hardships that fall within the "heartland," it is difficult to conclude that Pereira's circumstances fall outside of it." *Id.* at 81. The Court noted that the "extensive care that Pereira provides his parents is no more, and likely less, time-consuming than the care required by young children with neurological deficiencies." *Id.* The Court referenced *United States v. Rybicki*, 96 F.3d 754 (4th Cir. 1996)[4] and *United States v. Sweeting*, 213 F.3d 95 (3d Cir.2000)[5] in which departures were denied to parents of children with neurological deficiencies. The Court also noted the likelihood that Pereira's parents would be unable to continue living independently if he were incarcerated and would need to move in with one of their children or become dependent upon an assisted living facility or home nursing. *Pereira*, 272 F.3d at 82. Nevertheless, the Court noted that there were feasible alternatives of care relatively comparable to that provided by the defendant, including the possibilities of home nursing and sibling assistance. *Id.* at 83. Therefore, the defendant was not irreplaceable.

The majority does not attempt either to relate or to distinguish the cited cases. In fact, the majority offers no reason at all to explain why Marine is irreplaceable to her children. Specifically, the majority does not explain why foster care is not a feasible alternative. Neither does the majority explain how the circumstances of this case differ from the countless cases, with substantially similar circumstances, in which a departure was denied.

Instead, the majority seeks to justify its conclusion that the facts of this case warrant a downward departure by comparing this case to *Reed, supra.* In *Reed*, the district court granted a thirteen-level downward departure based on the fact that Reed had assumed a significant role in the upbringing of her five nieces and nephews. *Reed*, 264 F.3d at 653. The

---

4. In *United States v. Rybicki*, 96 F.3d 754 (4th Cir.1996), the Court reversed a downward departure granted to the defendant who cared for his nine-year-old son with neurological impairment and his wife with fragile mental health.

5. In *United States v. Sweeting*, 213 F.3d 95 (3d Cir.2000), the Court reversed a downward departure granted to a single mother of five, one of whom had a serious neurological impairment.

Government appealed, arguing that Reed was not the legal guardian of the children, her financial support was meager, her time commitment paled in comparison to that of a parent, and that prior to her conviction she spent several months of the year on vacation in Jamaica. *Id.* at 654. This Court reversed the district court's downward departure, agreeing with the Government that Reed's responsibilities for her nieces and nephews fell "far short of that of a typical parent." *Id.* at 655.

The first problem with the majority's strategy, however, is that the facts in *Reed* did not justify a departure. That the facts of this case are stronger than in *Reed* does not indicate that a downward departure is warranted. The majority's analogy would be appropriate if the departure in *Reed* had been affirmed; but the fact that Marine's circumstances are stronger than circumstances in which we denied departure does not lend credibility to the departure in this case. It does not necessarily follow that because the facts of this case are stronger than in *Reed* a case for downward departure is made; Marines' circumstances must still exceed the "heartland" of the Guidelines. As noted above, the majority has not actually shown that Marine is irreplaceable.[6] She is, in fact, still within the Guidelines.

Strikingly, even the district court implicitly acknowledged that the family circumstances in this case were not truly extraordinary. In a soliloquy the district court stated

> I'm going further afield than usual because it is difficult to perceive what our society is doing as a result of these drug crimes, but it is also always true that the families are the people who suffer, and the question before this

Court is can we do anything to prevent the disintegration of a family beyond that which has already been suffered. Can we find these circumstances so extraordinary to be outside of the heartland contemplated by the guidelines and frowned upon but not prohibited from consideration by 5(h)1.6 [sic] of the guidelines.

. . . .

> It is my conclusion that the circumstances coalescing in this case do, in fact, justify a downward departure, not because of the defendant but because of the children in this case and the responsibility of the defendant in caring for those children.

(J.A. at 159).

The Third Circuit found similar remarks unacceptable in *Sweeting, supra.* In *Sweeting,* the district court stated:

> It is a breakdown in the family, a breakdown that is all too common. And we collectively, as a society, should do what we can to support the family and to sometimes take—you can call it a risk or make an investment in a decision that supports the family. And I have decided in this case that I will make that investment collectively on behalf of society that invests in me the discretionary authority to depart downward based upon extraordinary circumstances.

*Sweeting,* 213 F.3d at 101. The problem with both district courts' assessments, as recognized by the Third Circuit, is that "[d]isruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration. Disintegration of family life in most cases is not enough to warrant departures." *Id.* at 102 (quoting *United States v. Gaskill,* 991 F.2d 82, 85 (3d Cir.1993)). Marine has simply

---

**6.** In fact, it is obvious that Marine is not an irreplaceable caretaker of her children since she was incarcerated for 30 months during which time her children must have had alternate means of care and support.

not produced any evidence of circumstances even remotely extraordinary to justify a departure.

The error of granting a downward departure in this case is compounded by the fact that, even if the circumstances were extraordinary, the downward departure granted would be inappropriate because a departure under § 5H1.6 for care or support must "effectively address the loss of caretaking or financial support." U.S.S.G. § 5H1.6 cmt. 1(B)(iv). At the time of sentencing, Marine had three children ages 17, 14 and 11 and a nine-month-old granddaughter. The downward departure was granted based, in part, upon the fact that Marine was irreplaceable in that she cared for her granddaughter, allowing her daughter to complete high school. Since the reduced sentence still required Marine to serve thirty months, by the time she completed the sentence, her daughter would be nineteen or twenty and would have graduated from highschool, the infant would be at least three years old, and the other children would be well into their teenage years. Thus, the reduced sentence does not even address the caretaking and support circumstances for which it was granted.

In its ultimate paragraph, the majority suggests that a "divide and conquer response" is inappropriate because in this case the "aggregation of circumstances, presents the rare instance where the constellation of pertinent factors warrants a departure." Yet the majority fails to explain *how* nought plus nought equals one. The majority also defends its decision with "case law supporting this outcome." The problem with this support is that it comes from other circuits, and there is case law in this Circuit to the contrary, namely *Reed, supra; Calhoun, supra; Brewer, supra; Sailes, supra;* and *Tocco, supra.*

The majority attempts to distinguish this precedent, but the attempt merely illuminates the fact that the majority has not explained how Marine's circumstances are extraordinary. First, as previously stated, the fact that Marine's circumstances are more compelling than the circumstances in this Circuit's precedent does not, of itself, prove that her circumstances are extraordinary. Second, the majority's attempt to distinguish *Calhoun, Brewer* and *Sailes* on the basis that the defendants in those cases had, or may have had, family members with whom to leave their children fails because there is no indication that the departures in those cases would have been granted had the defendants been without extended family support.

In *Brewer,* the Court stated that the fact that innocent children may suffer is not uncommon. *Brewer,* 899 F.2d at 508. Contrary to the majority's inference, the Court did not rely on the fact that the defendants had "stable family relationships" and "gainfully employed spouses" in denying the departure. In fact, the Court stated

> The district court failed to point out why the defendants' community support or family ties were "substantially in excess" of those generally involved in other ... cases ... The defendants have stable family relationships, had good jobs at the bank, their spouses were gainfully employed, and they had no financial difficulties which they claimed justified them in any way in committing this serious economic crime. Many [criminals] have long tenured employment, enjoy community support, have families to raise and support, or other family responsibilities. We have serious doubt that these factors are sufficiently unusual to warrant departure.

*Id.* (citation and quotation marks omitted). This statement does not justify a legal conclusion to the effect that lack of family support to care for children justifies a downward departure. Similarly, in *Cal-*

*houn* the Court again stated that "[the Guidelines, right or wrong, contemplate that innocent people may suffer as a result of a defendant's incarceration.... That Calhoun's infant may suffer does not give rise to an extraordinary circumstance that should be reflected in sentencing.]" *Calhoun,* 49 F.3d at 237.

As the majority notes, the opinions in *Calhoun* and *Sailes* fail to reference whether there were means of alternate care, but the fact that in these cases whether the defendant was the sole custodian or had alternate means of support is not mentioned in the analysis only implies that it is not particularly relevant. In short, the majority has still not addressed how Marine is irreplaceable or how the possibility of foster care transports this case into the realm of the extraordinary.

For all of the foregoing reasons, I respectfully **DISSENT.**