*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0222P (6th Cir.)
File Name: 02a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

TODD ALLEN DUNHAM
(00-2353); ARTURO
ALDERETE-MONSIVAIS
(01-1022),
    *Defendants-Appellants.*

Nos. 00-2353;
01-1022

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
Nos. 99-00064; 00-00125—Gordon J. Quist, District Judge.

Argued: June 11, 2002

Decided and Filed: July 3, 2002

Before: KEITH and DAUGHTREY, Circuit Judges;
MARBLEY, District Judge.

_____

*The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** C. Mark Pickrell, Nashville, Tennessee, Craig A. Frederick, Grand Rapids, Michigan, for Appellants. John C. Bruha, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** C. Mark Pickrell, Nashville, Tennessee, Craig A. Frederick, Grand Rapids, Michigan, for Appellants. Brian P. Lennon, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge. Defendants-Appellants Todd Allen Dunham ("Dunham") and Arturo Alderete-Monsivais ("Alderete-Monsivais") were participants in a drug conspiracy that imported large quantities of marijuana and cocaine from the Republic of Mexico to drug dealers in the Lansing, Michigan area. The drugs were then distributed to numerous locations in the United States, including Texas, Colorado, and Illinois. Dunham pled guilty to one count of Conspiracy to Distribute and Possess With Intent to Distribute Marijuana, Cocaine, and Heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of Being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). Alderete-Monsivais pled guilty to one count of Interstate Foreign Travel in Aid of Racketeering Enterprises, in violation of 18 U.S.C. § 1952(a)(3). Dunham was sentenced to 299 months in prison, and Alderete-Monsivais was sentenced to 60 months. On appeal, Dunham argues that the District Court erred in enhancing his offense level under the Federal Sentencing Guidelines by two levels for obstruction of justice as a result of his failure to respond to a federal grand jury subpoena that sought handwriting exemplars and photographs of tattoos on his body. Alderete-

Monsivais argues that the District Court erred in sentencing him to the statutory maximum of 60 months, in light of the fact that he had completely served a 19-month state sentence for the same conduct that formed the factual basis of his guilty plea to the federal charge.

For the reasons set forth below, we AFFIRM the District Court's sentences for both Appellants.

## I. BACKGROUND

On April 8, 1999, federal agents executed multiple search warrants in Lansing, including one for the home of Dunham's girlfriend, Dawn Brunette. Numerous coded letters that appeared to be from Dunham, as well as a "code sheet" used to decipher the letters, were among the various items seized from Ms. Brunette's home. The coded letters, along with tape-recorded telephone conversations of Dunham while in federal custody on a previous drug charge, gave investigators reason to believe that Dunham, with the assistance of Ms. Brunette, was smuggling drugs into the various federal prisons where he was incarcerated, and that he had some affiliation either with the Mexicana MI or the Mexican Mafia, two notorious prison gangs.

As a result, on May 3, 1999, Dunham was served with a federal grand jury subpoena ordering him to submit handwriting exemplars and to permit photographs to be taken of his tattoos, which investigators believed would help establish his affiliation with either the Mexicana MI or the Mexican Mafia. The subpoena did not require Dunham to testify. A United States Customs Service Special Agent served the subpoena in El Paso, Texas, where Dunham was serving his term of supervised release following his release from federal prison. After consultation with his attorney, Dunham never appeared before the grand jury.

After Dunham failed to appear, the grand jury, on September 16, 1999, returned a seven-count indictment against Dunham and numerous co-defendants, including

Alderete-Monsivais. Dunham pled guilty to one count of Conspiracy to Distribute and Possess With Intent to Distribute Marijuana, Cocaine, and Heroin, and one count of Being a Felon in Possession of a Firearm. Alderete-Monsivais pled guilty to one count of Interstate Foreign Travel in Aid of Racketeering Enterprises.

At his sentencing hearing, Dunham raised a number of objections to the material contained in the Presentence Investigative Report, including the recommendation that the District Court increase Dunham's guideline offense level by two levels for obstruction of justice as a result of his failure to appear before the grand jury to provide handwriting exemplars and photographs of his tattoos. The District Court overruled Dunham's objections and proceeded to enhance his offense level by two levels. The District Court concluded that "the grand jury was investigating the very drug dealing with which defendant was charged and involved . . . [and] that the defendant had the subpoena in his hand; and yet, he chose to ignore it." Consequently, Dunham's total sentencing guideline offense level was 36 and his sentencing range was 292 to 365 months, based on his criminal history category of five. The District Court sentenced Dunham to 299 months on the drug conspiracy charge and to 120 months on the firearms count, with the sentences to run concurrently.

At sentencing, Alderete-Monsivais objected to the Presentence Investigative Report's recommendation for a 60-month sentence. Alderete-Monsivais requested that the District Court sentence him to 41 months, which he reached by subtracting from the 60-month statutory maximum the 19 months that he had served in a Kansas state prison for possession of marijuana. The possession of marijuana was the same conduct that formed the factual basis for Alderete-Monsivais's plea to the federal charges in the present case. The District Court, however, pointed out that under the Sentencing Guidelines, Alderete-Monsivais's guilty plea to the federal charge could warrant a sentence of between 92 and 115 months, given his offense level of 23 and his criminal

convictions, then those two defendants will serve an equal term of imprisonment upon their federal conviction, regardless of whether their state sentence had been fully discharged. If, as Alderete-Monsivais advocates, U.S.S.G. § 5G1.3(b) did not make this distinction and credited defendants for time served on discharged as well as undischarged state sentences, then a defendant with a previously discharged state sentence would serve a shorter term of imprisonment upon his subsequent federal conviction than would a defendant with an undischarged state sentence. U.S.S.G. § 5G1.3(b) serves to prevent this potential inequity. Because there is a rational basis for U.S.S.G. § 5G1.3(b)'s distinction between discharged and undischarged state sentences, we reject Alderete-Monsivais's equal protection argument.

For these reasons, we conclude that the District Court correctly sentenced Alderete-Monsivais to 60 months in prison.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's decision to enhance Defendant-Appellant Todd Allen Dunham's offense level by two levels for obstruction of justice and its decision to sentence Defendant-Appellant Arturo Alderete-Monsivais to 60 months in prison.

sentence concurrently to his previously *discharged* 19-month state sentence.

Alderete-Monsivais argues that, even if the District Court could not run the sentences concurrently under U.S.S.G. § 5G1.3(b), the discharged term of imprisonment provides a basis for the District Court to depart downward in sentencing him. *United States v. O'Hagan*, 139 F.3d 641, 657-58 (8th Cir.1998). A district court's departure decisions for sentencing purposes is reviewed for an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 98 (1996). Given Alderete-Monsivais's extensive criminal history, we conclude that the District Court did not abuse its discretion in refusing to depart downward from his 60-month sentence.

Lastly, Alderete-Monsivais argues that U.S.S.G. § 5G1.3(b) violates the equal protection component of the Due Process Clause of the Fifth Amendment because it mandates credit for undischarged sentences, but not for discharged sentences. We reject his argument. In the absence of a suspect classification based on race or other forbidden grounds, a legislative distinction, such as the distinction between a discharged and an undischarged sentence, requires only a rational basis to survive a challenge that the classification violates the substantive component of the Due Process Clause of the Fifth Amendment. *United States v. Otto*, 176 F.3d 416, 418 (8th Cir.1999). "The rational basis justifying a statute against an equal protection claim need not be stated in the statute or in its legislative history; it is sufficient that a court can conceive of a reasonable justification for the statutory distinction." *Estate of Kunze v. Comm'r of Internal Revenue*, 233 F.3d 948, 954 (7th Cir.2000) (citing *McDonald v. Board of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969)). We find that there is a reasonable justification for U.S.S.G. § 5G1.3(b)'s distinction between discharged and undischarged state sentences. That distinction ensures that if two defendants who are convicted of identical state law crimes are subsequently convicted on a federal charge for the same conduct that formed the factual basis of their state

history category of six. Noting that a 41-month sentence would not adequately reflect the seriousness of Alderete-Monsivais's actual offense behavior, the District Court sentenced Alderete-Monsivais to the 60-month statutory maximum.

The District Court arrived at this sentence using two different rationales, both of which credited Alderete-Monsivais with the 19 months that he had served on his state sentence. Under the first rationale, the District Court subtracted 19 months from Alderete-Monsivais's guideline range of 92 to 115 months. By doing so, the District Court realized that the resulting sentence, 73 to 96 months, was still well over the 60-month statutory maximum. The District Court then determined that it would be bound by the 60-month maximum. Under the second rationale, the District Court subtracted 19 months from the 60-month statutory maximum, resulting in a 41-month sentence. However, the District Court then departed upward by 20 months for Alderete-Monsivais's extensive criminal history, resulting in a 61-month sentence. Again, the District Court determined that it would be bound by the 60-month maximum.

Dunham and Alderete-Monsivais both appeal the District Court's sentences. We address each of their arguments in turn.

## II. ANALYSIS

### A. Defendant Dunham's appeal

Dunham argues that the District Court improperly enhanced his guideline offense level by two levels for obstruction of justice. The United States Sentencing Guidelines ("U.S.S.G.") discuss enhancements for obstruction of justice in § 3C1.1. We review de novo a district court's application of U.S.S.G. § 3C1.1. *United States v. McDonald*, 165 F.3d 1032, 1035 (6th Cir.1999).

U.S.S.G. § 3C1.1 provides, in pertinent part, that:

If (A) the defendant *willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; . . . increase the offense level by 2 levels.

U.S. Sentencing Guidelines Manual § 3C1.1 (2000) (emphasis added). "U.S.S.G. § 3C1.1 requires the government to prove by a preponderance of the evidence that the defendant 'willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation.'" *United States v. Parrott*, 148 F.3d 629, 635 (6th Cir.1998).

Dunham argues that the government failed to satisfy its burden under the preponderance of evidence standard because it did not articulate specific facts that would support the conclusion that his failure to comply with the grand jury subpoena was willful. Absent these specific facts, Dunham argues that the District Court erred in enhancing his offense level for obstruction of justice. We find Dunham's argument to be unconvincing. We hold that when a defendant has provided no adequate justification as to why he was unable to comply with a grand jury subpoena, the defendant's failure to appear is, by itself, sufficient to satisfy the government's burden that defendant willfully obstructed or impeded the administration of justice. *See United States v. Macado*, 225 F.3d 766, 771 (D.C. Cir.2000) (holding that "there are few better examples of a classic obstruction of justice than a defendant who refuses to give handwriting samples when compelled by subpoena [to do so]"); *see also United States v. Brazel*, 102 F.3d 1120 (11th Cir.1997); *United States v. Ruth*, 65 F.3d 599 (7th Cir.1995); *United States v. Reyes*, 908 F.2d 281 (8th Cir.1990).

There is no dispute that Dunham was properly served with a federal grand jury subpoena requesting handwriting

exemplars and photographs of his tattoos, and that he disregarded the subpoena. Even Dunham concedes this fact in his brief: "[I]t is indisputable that Dunham received a subpoena to appear before the grand jury, and it is indisputable that he failed to appear." (Dunham's Br. at 14). We thus conclude that the District Court was correct in enhancing Dunham's offense level by two levels for obstruction of justice.

### B.  Defendant Alderete-Monsivais's appeal

Alderete-Monsivais argues that pursuant to U.S.S.G. § 5G1.3(b), the District Court was required to run his 60-month federal sentence concurrently with his previously discharged 19-month state sentence; consequently, he maintains that the District Court should have sentenced him to 41 months on his federal sentence. U.S.S.G. § 5G1.3(b) states:

If subsection (a) does not apply, and the *undischarged* term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to his *undischarged* term of imprisonment.

U.S. Sentencing Guidelines Manual § 5G1.3(b) (2000) (emphases added). By its terms, U.S.S.G. § 5G1.3(b) only applies to a defendant serving an undischarged term of imprisonment at the time of his federal sentencing. *United States v. Otto*, 176 F.3d 416, 418 (8th Cir.1999); *United States v. Turnipseed*, 159 F.3d 383, 386 (9th Cir.1998); *United States v. Rizzo*, 121 F.3d 794, 800 (1st Cir.1997); *United States v. McHan*, 101 F.3d 1027, 1040 (4th Cir.1996); *United States v. Brassell*, 49 F.3d 274, 279 (7th Cir.1995); *United States v. Ogg*, 992 F.2d 265, 266 (10th Cir.1993). Therefore, U.S.S.G. § 5G1.3 does not, as Alderete-Monsivais argues, require the District Court to run his 60-month federal