*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0487p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 07-5551

VERNON TRESMONT CARTER,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 06-00007—William J. Haynes, Jr., District Judge.

Argued: November 29, 2007

Decided and Filed: December 17, 2007

Before: ROGERS and SUTTON, Circuit Judges; BERTELSMAN, District Judge.[*]

---

## COUNSEL

**ARGUED:** David L. Cooper, THE LAW OFFICE OF DAVID L. COOPER, Nashville, Tennessee, for Appellant. Darryl A. Stewart, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** David L. Cooper, THE LAW OFFICE OF DAVID L. COOPER, Nashville, Tennessee, for Appellant. Darryl A. Stewart, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

## OPINION

---

ROGERS, Circuit Judge. Defendant Vernon T. Carter appeals his sentence of 15 months' imprisonment for filing false income tax returns. At the sentencing hearing, the district court denied Carter's motion for a downward departure/variance and enhanced Carter's sentence by two levels for obstruction of justice. Carter raises three arguments on appeal: (1) the district court erred when it denied his motion for a downward departure and/or variance based upon "exceptional family circumstances"; (2) the district court failed to consider adequately a sentence of probation and home detention based on the sentence given to Carter's niece for similar conduct; and (3) the district court erred when it enhanced his sentence by two levels for obstruction of justice. Because the district

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

court did not err in applying the obstruction enhancement, and because it imposed a reasonable sentence, we affirm.

**I.**

Between January 31, 2001, and January 13, 2003, Vernon Carter filed three federal tax returns that contained false information. As a result of those falsifications, Carter collected from the government tax refunds totaling $ 8,397. On January 18, 2006, the government charged Carter with three counts of filing false, fictitious, and fraudulent tax returns for calendar years 2000, 2001, and 2002, in violation of 18 U.S.C. § 287 and 18 U.S.C. § 2. Thereafter, a jury convicted Carter on all three counts. Carter's niece, Tamara Carter, was also involved in the tax fraud scheme. Tamara pleaded guilty to three counts of filing false tax returns and testified against Carter at trial. She received a sentence of 60 months' probation and six months of house arrest, and was ordered to pay restitution in the amount of $ 8,242.

The district court held Carter's sentencing hearing on April 20, 2007. Prior to the hearing, Carter filed a motion requesting a downward departure pursuant to U.S.S.G. § 5H1.6 or, in the alternative, a "tailored sentence" under 18 U.S.C. § 3553(a). In the motion, Carter argued that a sentence of probation and home detention was appropriate on account of Carter's "exceptional family circumstances," and in light of the sentence that Carter's niece Tamara received for similar conduct. Carter also argued that the Presentence Investigation Report's assessment of the obstruction of justice enhancement under U.S.S.G. § 3C1.1 was improper.

During the sentencing hearing, Carter presented testimony from his wife, Danielle Carter. Mrs. Carter testified that she suffered from rheumatoid arthritis and had been unable to work as a result of her condition. Mrs. Carter testified that although her doctors hoped that she would be able to work in the future, Carter—who had earned approximately $1,320 per month as a cook at TGI Friday's—was the only person currently earning income for the household. Mrs. Carter also testified that the Carters have three minor children, who were two, five, and eight years old at the time of the sentencing hearing. Two of the children were born with sickle cell anemia and one suffers from asthma. According to Mrs. Carter, sickle cell anemia causes her children to experience "pain crises." One of the children had recently been hospitalized for two weeks due to his medical condition.

Mrs. Carter related that Carter is a good father and helpful with the care of their children. She testified that Carter's assistance in caring for their children is made necessary by her rheumatoid arthritis. She also testified that financial assistance from other family members would not be available in the event that Carter became incarcerated. On cross-examination, Mrs. Carter acknowledged that the family's healthcare costs, hospital bills, and medication are at least partially covered by health insurance called TennCare, and that the family would remain covered by TennCare even if Carter became incarcerated. Mrs. Carter further testified that her family receives food stamps and lives in government subsidized housing. She acknowledged that the food stamp and housing support would not change drastically in the event that her husband became incarcerated.

Internal Revenue Service ("IRS") Special Agent John Thompson also testified at the sentencing hearing. Thompson related that, on April 12, 2004, IRS agents investigating Carter's tax activities interviewed Carter regarding his returns for tax years 1999, 2000, 2001, and 2002. According to Thompson, Carter told the agents that he had not signed or filed the tax returns in question and did not know who had signed the returns. Thereafter, agents served Carter with a summons requesting that Carter appear to provide fingerprint and handwriting exemplars. Carter failed to appear pursuant to the summons, forcing Agent Thompson to obtain exemplars of Carter's handwriting from the Tennessee Parole and Probation Office and a copy of Carter's fingerprints

from the Metropolitan Nashville Police Department ("MNPD"). Thompson also obtained copies of cancelled checks that the filer of the tax returns in question had obtained in connection with a refund anticipation loan. Thompson sent the obtained records to a forensic laboratory for analysis and the laboratory matched Carter's signature to the cancelled checks. The lab also matched a fingerprint on one of the checks to the fingerprint records that Thompson obtained from the MNPD. On cross-examination, Thompson acknowledged that obtaining the checks, fingerprints, and handwriting exemplar was essentially a "ministerial function" that did not require Carter's cooperation.

At the conclusion of the sentencing hearing, the district court determined that the combination of Carter's false denials to investigators and his failure to appear pursuant to the summons warranted an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The district court also denied Carter's motion for a downward departure/variance based on "exceptional family circumstances." The court explained that Carter used his family members in the commission of the offense and that Carter's children would not be left in circumstances that warranted a sentence below the applicable guidelines range. Finally, the district court found that Carter had a more extensive criminal history than his niece and thus refused to vary Carter's sentence to match his niece's sentence. With the obstruction of justice enhancement, the district court calculated Carter's total offense level to be 10. Carter's criminal history category was IV, yielding an advisory sentencing guidelines range of 15 to 21 months' imprisonment. The district court imposed a within-guidelines sentence of 15 months' imprisonment, three years of supervised release, restitution in the amount of $ 8,397, and a $ 300 special assessment.

## II.

Because the district court properly applied the obstruction enhancement and imposed a reasonable sentence, we affirm. Carter's false statements to investigators and his failure to appear, pursuant to a summons, to provide fingerprints and handwriting exemplars warranted the obstruction of justice enhancement under U.S.S.G. § 3C1.1. Moreover, in denying Carter's motion for a downward departure/variance, the district court properly considered Carter's arguments, accounted for the relevant 18 U.S.C. § 3553(a) factors, and otherwise imposed a reasonable sentence.

## A.

Carter's first argument, that the district court erred in applying the two-level obstruction of justice enhancement to his offense level, is without merit. Where, as here, the facts underlying the obstruction enhancement are undisputed, we review de novo whether the undisputed facts are sufficient to establish obstruction of justice. *See United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007).[1] Under U.S.S.G. § 3C1.1, an offense level may be increased by two levels for obstruction of justice if,

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

---

[1] We recognize that this court has previously held that a clear error standard of review is "appropriate for reviewing sentencing decisions under § 3C1.1 where the sole issue before the district court is a fact-bound application of the guideline provisions." *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002). We need not decide between the two standards here because the district court's decision is properly upheld under either.

Carter bases his argument against the obstruction enhancement on Application Notes 4(g) and 5(b) of § 3C1.1. Application Note 5(b) states that "making false statements, not under oath, to law enforcement officers" is not sufficient for the obstruction of justice enhancement unless Application Note 4(g) applies. Application Note 4(g) applies only if a defendant "provid[ed] a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." Because Carter was not under oath when he made false statements to IRS agents, he argues that Application Note 4(g) governs the determination of whether the obstruction enhancement was proper. Accordingly, Carter contends that the district court erred in applying the obstruction enhancement because his conduct did not "significantly obstruct or impede" the government's investigation.

Carter's position is not persuasive on the record of this case. As a preliminary matter, Application Notes 4(g) and 5(b) are relevant only to the extent that an obstruction enhancement is based on false statements made to investigators while not under oath. In this case, however, the record is clear that the district court applied the obstruction enhancement not only because Carter lied to investigators, but also because Carter failed to appear to provide handwriting exemplars and fingerprints pursuant to a summons. Though the interplay between Application Notes 4(g) and 5(b) leads to a conclusion that Carter's lies to investigators, standing alone, would not ordinarily warrant an obstruction enhancement unless those lies "significantly obstructed or impeded" the government's investigation, those application notes do not purport to operate in cases where a defendant lies to investigators *and* commits other conduct that might be considered obstructive. Here, in addition to lying to investigators, Carter also failed to appear pursuant to a summons. Thus, whether Carter's actions "significantly obstructed or impeded" the government's investigation is not the relevant question because Carter's failure to appear pursuant to the summons falls outside of the terms of Application Notes 4(g) and 5(b). Instead, the relevant question here is whether the totality of Carter's conduct warrants the obstruction enhancement.[2] Because the totality of Carter's conduct does not fit within one of the examples listed in § 3C1.1's application notes, § 3C1.1's general provision governs our analysis.

As noted above, § 3C1.1 authorizes an enhancement for obstruction of justice if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and "the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. The record reveals that investigators questioned Carter regarding his tax returns for 1999, 2000, 2001, and 2002, and Carter falsely denied signing or filing those returns. As a result of Carter's lies, the government was forced to collect Carter's fingerprint and handwriting exemplars in order to determine the identity of the person who signed and filed the fraudulent returns. In this connection, the government issued a summons requesting that Carter appear to provide fingerprint and handwriting samples. Carter, however, inexplicably failed to appear pursuant to the summons, forcing the government to take additional investigatory steps to obtain the records from other sources. This caused a delay in the government's investigation of crimes that were subject to a five year statute of limitations. *See* 18 U.S.C. § 3282(a). Although the government's initial questioning of Carter included Carter's 1999 tax return, the statute of limitations on that tax return expired before the government indicted Carter.

In light of the foregoing facts, the district court properly determined that Carter's conduct warranted the obstruction of justice enhancement. The record indicates that Carter's actions impeded the government's investigation of his tax crimes. Carter's lies to investigators and his

---

[2]Of course, a finding that Carter's lies to investigators, standing alone, significantly impeded or obstructed the government's investigation would provide an alternative basis for the obstruction enhancement. We do not address that question here.

failure to appear pursuant to the summons forced the government to gather considerable evidence to ascertain the identity of the person who signed and filed the fraudulent tax returns. Although the record is not clear that Carter's actions were the only factor that contributed to the government's failure to indict Carter for his 1999 tax return, Carter's actions certainly created an investigatory delay that contributed to the expiration of the statute of limitations period for that return. Further, there is no record evidence indicating that Carter's lies were the result of any "confusion, mistake, or faulty memory," *see* U.S.S.G. § 3C1.1 app. n.2, or that Carter had an adequate justification for not complying with the summons. Indeed, in *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002), we stated that "when a defendant has provided no adequate justification as to why he was unable to comply with a grand jury subpoena, the defendant's failure to appear is, by itself, sufficient to satisfy the government's burden that defendant willfully obstructed or impeded the administration of justice." Consequently, the record indicates that Carter willfully impeded the IRS's investigation of his tax crimes.

Our conclusion here finds substantial support in case law. In this circuit and others, obstruction enhancements under § 3C1.1 have consistently been upheld on the basis of a defendant's failure to appear, pursuant to a grand jury subpoena, to provide handwriting exemplars and other information. For instance, in *Dunham* we held that a defendant's failure to appear pursuant to a grand jury subpoena to provide handwriting exemplars and photographs warranted an obstruction enhancement. 295 F.3d at 609; *see also United States v. Williams*, 48 F. App'x 974, 975 (6th Cir. 2002); *United States v. Ruth*, 65 F.3d 599, 608 (7th Cir. 1995); *United States v. Reyes*, 908 F.2d 281, 290 (8th Cir. 1990); *United States v. Brazel*, 102 F.3d 1120, 1163–64 (11th Cir. 1997). And, in *United States v. Valdez*, 16 F.3d 1324, 1335 (2d Cir. 1994), the Second Circuit stated that "there are few better examples of a classic obstruction of justice than a defendant who refuses to give handwriting samples when compelled by a subpoena."

Carter argues on appeal that, because the government was able to obtain his fingerprint and handwriting exemplars from other sources, the government's investigation was not impeded or obstructed. Carter also argues that the obstruction enhancement was improper in light of our holding in *United States v. Obi*, 195 F. App'x 335 (6th Cir. 2006). These arguments are unavailing. First, that the government eventually obtained Carter's fingerprints and handwriting exemplars from other sources does not establish that the government's investigation was not impeded by Carter's conduct. Even if it did, § 3C1.1 applies to attempted obstruction, and Carter's actions satisfy the attempt provisions of § 3C1.1 regardless of whether any actual obstruction occurred. As this court explained in *United States v. Williams*, 48 F. App'x 974, 975 (6th Cir. 2002), albeit in an unpublished opinion, "it is irrelevant whether [government investigators] were able to obtain part of what they needed from the state because the district court did not err in concluding that [defendant] *attempted* to impede or obstruct the investigation by refusing to comply with the grand jury's subpoena."

Second, the facts of *Obi* are distinguishable from the instant case. In *Obi*, the defendant lied to investigators regarding the circumstances surrounding the death of a female, who died while in the defendant's home. *Obi*, 195 F. App'x at 337–40. The defendant's lies caused the government to delay searching the defendant's home for four days, during which the defendant's mother cleaned the home. *Id.* The government argued for the obstruction enhancement on the basis that the cleaning resulted in the loss of valuable evidence. *Id.* Although *Obi*, like the instant case, involved a situation where the government eventually obtained evidence to prove its case against the defendant despite the defendant's actions, the obstructive conduct in *Obi* consisted exclusively of lies to investigators. There was no evidence in *Obi* that the defendant otherwise attempted to thwart the government's investigation. Here, Carter both lied to investigators and failed to appear pursuant to a summons. This distinction is significant for two reasons. First, it shows that Carter's course of obstructive conduct was more robust than the course of conduct at issue in *Obi*, and thus more likely to be a willful attempt to obstruct the government's investigation. Second, because the obstructive conduct in *Obi* involved only lying to investigators while not under oath, Application

Note 4(g)'s "significantly obstructed or impeded" standard governed that case. As discussed above, that standard does not govern the totality of Carter's conduct here and, as a consequence, the legal analysis in *Obi* is not directly on point. Notably, even in *Obi* there was a thoughtful dissent. *See id.* at 341–42.

For these reasons, the district court's application of the obstruction enhancement was proper.

**B.**

Carter's challenge to the district court's decision to deny his motion for a downward departure and/or variance based on "exceptional family circumstances" also does not warrant reversal. First, this court has no discretion to review the district court's denial of the downward departure. Even after *Booker*, a district court's decision to deny a motion for a downward departure may not be reviewed unless the district court incorrectly believed that it lacked discretion to depart downward.[3] *See United States v. Puckett*, 422 F.3d 340, 344–46 (6th Cir. 2005). Here, the record is clear that the district court acknowledged and understood its discretion to grant a downward departure for family circumstances. Indeed, the district court remarked during the sentencing hearing that it had granted such departures in the past. Consequently, we decline to review the district court's decision to not depart downward under U.S.S.G. § 5H1.6.

Second, the record in this case indicates that the district court's refusal to vary Carter's sentence below the applicable advisory guidelines range did not render Carter's sentence unreasonable. Although the district court's denial of the downward departure is not reviewable, Carter's sentence remains reviewable for reasonableness. *See Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *United States v. Booker*, 543 U.S. 220, 261 (2005); *see also United States v. McBride*, 434 F.3d 470, 476–77 (6th Cir. 2006). The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review. *Gall v. United States*, No. 06-7949, 2007 WL 4292166, at *6 (U.S. Dec. 10, 2007). Review for reasonableness has both procedural and substantive components. *See Gall*, 2007 WL 4292116, at *7; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

The record indicates that the district court committed no significant procedural error with respect to Carter's sentence. The district court did not "fail[] to calculate (or improperly calculat[e]) the Guidelines range, treat[] the Guidelines as mandatory, fail[] to consider the § 3553(a) factors, select[] a sentence based on clearly erroneous facts, or fail[] to adequately explain the chosen sentence." *Gall*, 2007 WL 4292116, at *7; *see also United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006). During the sentencing hearing, the district court heard testimony and argument regarding the Carter family's medical and financial condition. The record reveals that the district court considered the properly calculated guidelines range before imposing a sentence and did not treat the sentencing guidelines as mandatory. The record also reveals that the district court considered a number of other relevant 18 U.S.C. § 3553(a) factors, including Carter's criminal history and the characteristics of his offense, *see* § 3553(a)(1), the Sentencing Commission's policy statements regarding reductions based on family ties and responsibilities, *see* § 3553(a)(5), and the need to avoid unwarranted sentencing disparities between similarly situated defendants, *see*

---

[3]Carter argues that the district court incorrectly added an "imminent prospects for loss of life" requirement to the requirements listed in Application Note 1(B) of § 5H1.6. But this argument does not establish that the district court was not aware of or did not understand its discretion to depart under the guidelines. Subsection (ii) of Application Note 1(B) provides that a departure under § 5H1.6 requires that "[t]he loss of caretaking or financial support substantially exceed[] the harm ordinarily incident to incarceration." U.S.S.G. § 5H1.6 app. n.1(B)(ii). The district court maintains discretion to interpret this requirement and, in any event, the record does not indicate that the district court actually applied an "imminent prospects for loss of life" standard in the instant case.

§ 3553(a)(6). And, after considering these factors, the district court adequately explained its sentencing decision.

Moreover, the record indicates that Carter's sentence is substantively reasonable, and that the district court accordingly did not abuse its discretion. A sentence may be "substantively unreasonable where the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Ferguson*, 456 F.3d at 664 (quoting *Webb*, 403 F.3d at 385). Because Carter's sentence of 15 months' imprisonment falls within the properly calculated guidelines range of 15 to 21 months, we afford it a presumption of reasonableness. *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Rita*, 127 S. Ct. at 2462.

Carter argues that his sentence of 15 months' imprisonment was excessive because the district court did not properly account for his "exceptional family circumstances" in its analysis of the § 3553(a) factors. Carter contends that his wife's rheumatoid arthritis prevents her from working and properly caring for their children, two of which suffer from sickle cell anemia. Under these circumstances, Carter argues, a sentence of probation would be appropriate to allow him to remain at home and provide assistance and financial support to his family. Carter's argument, however, fails to establish that his sentence was substantively unreasonable.

The record indicates that the district court properly considered the relevant § 3553(a) factors and did not select Carter's sentence arbitrarily, base his sentence on impermissible factors, or give undue weight to any one § 3553(a) factor. At the sentencing hearing, the district court considered the Carter family's financial and medical circumstances and concluded that Carter's children would not be left in such extraordinary circumstances that a sentence of probation and home confinement was warranted. The district court noted that Carter's family would continue to receive healthcare, food stamp, and housing benefits regardless of whether Carter was imprisoned, and that Mrs. Carter would remain available to care for the children. *See* § 3553(a)(5)(A). The district court expressed concern that Carter had involved family members in the offense by listing their names on the fraudulent tax returns and noted that Carter's criminal history weighed against assessing a lower sentence. *See* § 3553(a)(1). The district court also explicitly rejected Carter's argument that a sentence of probation should be imposed to avoid an unwarranted sentencing disparity between Carter and his niece. *See* § 3553(a)(6).

The record thus reveals that the district court did not abuse its discretion in imposing a sentence of 15 months' imprisonment. The court reasonably concluded that Carter's absence from his family would be mitigated by Mrs. Carter's continued presence at home and the family's continued receipt of substantial healthcare, housing, and sustenance benefits. The court also reasonably considered Carter's criminal history and his utilization of family members in the commission of the offense as factors weighing against a variance. Further, the district court's analysis and refusal to vary Carter's sentence finds support in the Sentencing Commission's general policy statement regarding the relevance of family circumstances to sentencing determinations. *See* § 3553(a)(5); U.S.S.G. § 5H1.6. Under § 5H1.6, courts are generally discouraged from reducing a defendant's sentence based on family circumstances. While, post-*Booker*, a district court may vary a sentence to account for a factor discouraged by the Sentencing Commission, the "totality of the circumstances" in this case indicates that the district court reasonably denied Carter's motion for a downward variance. *See Gall*, 2007 WL 4292116, at *7.

Carter argues that this court has, in the past, affirmed downward departures based on exceptional family circumstances on facts similar to his case. But Carter's argument relies on cases that are factually distinguishable from the instant one. Each case Carter points to involved a government appeal of a district court's grant of a downward departure. In *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007), this court rejected the government's appeal of a downward departure

for family circumstances after determining that the defendant was "irreplaceable." *Id.* at 327–29. The court upheld the district court's determination that there existed no "reasonably available" alternative for the defendant's care of her father and that jailing the defendant would have forced the entire family into welfare. *Id.* In *United States v. Holz*, 118 F. App'x 928 (6th Cir. 2004), the defendant's wife had mental health issues and required care that the defendant was uniquely able to provide. *Id.* at 933–34. Finally, in *United States v. Marine*, 94 F. App'x 307 (6th Cir. 2004), an unpublished opinion to which there was a vigorous dissent, the defendant had no criminal history points and was the sole caretaker of her minor children and one grandchild. *Id.* at 308–09. Even though no other family member was available to care for her children and grandchild, the defendant still received a sentence of 30 months' imprisonment. *Id.*

The circumstances of Carter's case are regrettable, but they are less compelling than the circumstances in *Husein*, *Holz*, and *Marine*. It is true that Carter's wife and children suffer from serious medical conditions. But testimony at the sentencing hearing showed that Carter's family would continue to receive substantial housing, sustenance, and health benefits from the state even in the event that Carter is incarcerated. Further, hearing testimony indicated that Carter's wife will be present to care for the children, and Carter's attorney acknowledged at the sentencing hearing that Mrs. Carter "can probably work." To be sure, Carter's imprisonment will be hard on his family. However, the record simply does not reflect that the district court abused its discretion in imposing Carter's sentence.

## C.

Finally, the district court did not fail to consider adequately the disparity between Carter's 15 month sentence and his niece's sentence of probation. Carter contends that his 15-month sentence was unreasonable in light of 18 U.S.C. § 3553(a)(6), which requires the district court to consider the goal of eliminating unjust sentencing disparities between similarly situated defendants.

The sentencing transcript indicates that the district court gave consideration to Carter's argument regarding the sentencing disparity between Carter and his niece. The district court properly rejected Carter's argument because Carter and his niece are not similarly situated defendants. Although both Carter and Tamara were convicted of three counts of tax fraud, Carter's criminal history placed him in Category IV and Tamara's criminal history placed her in Category I. Sentencing courts are authorized, and indeed obligated, to consider the criminal history of a defendant as a factor in fashioning a sentence under 18 U.S.C. § 3553(a)(1). Further, Tamara received credit for acceptance of responsibility and pled guilty to her crime, whereas the district court rejected the contention that Carter had accepted responsibility for his actions. Finally, the district court expressed a belief that Tamara was not the "prime mover" in the criminal enterprise, but acted based on what Carter suggested. The district court therefore did not abuse its discretion in refusing to give Carter the same sentence that his niece received.

## III.

For the foregoing reasons, we affirm.