NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0343n.06

No. 12-1492

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Apr 05, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| TYJUAN DION WALLACE, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |

**BEFORE: WHITE and DONALD, Circuit Judges; VARLAN, Chief District Judge.**[*]

**HELENE N. WHITE, Circuit Judge.** Tyjuan Dion Wallace (Wallace) appeals his 96-month sentence imposed after he entered an *Alford*-type guilty plea[1] to one count of unlawful use of a communications facility, in violation of 21 U.S.C. § 843(b). He argues that his sentence is procedurally and substantively unreasonable. We disagree and AFFIRM.

**I.**

**A.**

In his plea agreement, Wallace stipulated to the following facts:

---

[*]The Honorable Thomas A. Varlan, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

[1]An *Alford*-type guilty plea is "a guilty plea entered by a defendant who either: 1) maintains that he is innocent; or 2) without maintaining his innocence, 'is unwilling or unable to admit' that he committed 'acts constituting the crime.'" *United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995) (quoting *North Carolina v. Alford*, 400 U.S. 25, 37 (1970)).

On February 23, 2011, Wallace used a cellular telephone assigned phone number [231]-457-6647 to contact a[n] undercover police officer for the purpose of arranging the sale of a controlled substance. Wallace did not realize that he was dealing with an undercover police officer. Wallace agreed to sell the undercover police officer 4.5 ounces of cocaine for $3,900 and told the officer to meet him at a gas station at the corner of Getty and Broadway in Muskegon, Michigan. Muskegon, Michigan, is in the Western District of Michigan.

The undercover officer arrived at the designated location at the appointed time on February 23, 2011, and Wallace again called him, using the same cellular telephone, and told the officer to drive to another location in the area of Getty and Barney in Muskegon, Michigan. The undercover officer went to this new location.

When the undercover officer arrived, Wallace approached him. To confirm his identity as the person he was supposed to meet, the undercover officer dialed telephone number [231]-457-6647 and the telephone possessed by Wallace sounded. After placing this call, the undercover officer handed Wallace $3,900 in cash and Wallace handed the officer a plastic bag containing purported cocaine.

The cocaine was submitted to the Michigan State Police Grand Rapids Crime Laboratory for analysis. An analysis of the substance delivered by Wallace confirmed that the substance weighed 186.44 grams and was a mixture that contained cocaine base (crack cocaine.) [Wallace] does not dispute the analysis of the controlled substance.

PID 237–38 (formatting altered; telephone number alterations indicated in original; first name omitted).

**B.**

As a result of the February 2011 drug deal, a federal grand jury charged Wallace with knowingly or intentionally distributing 28 or more grams of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Wallace entered a guilty plea to this charge before a magistrate judge. The magistrate judge, however, declined to recommend that the district court accept the plea, concluding that it lacked a sufficient factual basis, given that Wallace's statements at the plea hearing suggested that he lacked the mens

rea of knowingly or intentionally distributing cocaine base. Specifically, Wallace stated that at the time of the drug transaction, he believed that he had delivered baking soda to the drug buyer in a sham deal. Meanwhile, the government filed an information and notice of a prior drug conviction, asserting that Wallace, if convicted, should be sentenced under § 841(b)(1)(B) to a mandatory term of not less than ten years, and up to life imprisonment, given his prior drug convictions. With a trial date looming, Wallace then sought to enter a no-contest plea to the drug charge in exchange for the government's withdrawal of the information and notice of a prior drug conviction, arguing that the court should accept the plea even though he could not admit to having knowingly delivered cocaine base to the undercover officer. The district court declined to accept the plea.

Before trial commenced on the drug charge, the government filed a superseding information, adding a charge of unlawful use of a communications facility (i.e., a telephone) in committing, causing or facilitating the distribution of a mixture or substance containing a detectable amount of cocaine or cocaine base, in violation of 21 U.S.C. § 843(b). Wallace agreed to enter a guilty plea to the § 843(b) charge in exchange for dismissal of the underlying drug charge. In his plea agreement, Wallace stipulated—for purposes of calculating his Sentencing Guidelines (Guidelines) range—that he was responsible for the distribution of 186.44 grams of a mixture or substance containing cocaine base.

Wallace appeared before a magistrate judge and requested that she recommend that the district court accept an *Alford*-type guilty plea to the § 843(b) charge. Defense counsel represented that Wallace was entering the plea because a conviction on the drug offense would result in a mandatory-minimum ten-year sentence and a Guidelines range of thirty years to life imprisonment,

whereas the § 843(b) charge carried a maximum prison term of only eight years (96 months). After the hearing, the magistrate judge issued a report, recommending that the district court accept the plea. The magistrate judge noted that the only dispute concerned Wallace's refusal to admit knowledge that the delivered substance contained cocaine base, but that he did not submit evidence disputing the Michigan police laboratory's finding that the substance contained a detectable drug quantity. The district court accepted the plea, finding it appropriate under *Alford*, given that the sentencing consequences were significant.[2]  Wallace does not challenge his plea on appeal.

**C.**

Prior to sentencing, a probation officer prepared a pre-sentence report (PSR), concluding that Wallace's Guidelines range was 110 to 137 months' imprisonment based on a total offense level of 25 and criminal history category of VI; but, because the statutorily-authorized maximum prison term of 96 months for the § 843(b) offense was less than the bottom of the Guidelines range, Wallace's guideline sentence was 96 months' imprisonment. The probation officer arrived at the total offense level of 25 based on the following calculations, using the November 2011 edition of the Guidelines manual:

> 1) A base offense level of 28. The base offense level for a § 843(b) offense is determined using the offense level applicable to the underlying offense—here, that is distribution of cocaine base in violation of § 841. U.S.S.G. § 2D1.6(a). The applicable guideline for a

---

[2]The district court also denied Wallace's motion for discovery sanctions against the government, which he brought pursuant to Federal Rule of Criminal Procedure 16 on the basis that the government had failed to timely turn over to the defense an audio recording of his post-arrest police interview and police reports summarizing his post-arrest statements. Wallace did not attribute fault to the U.S. Attorney's Office but suggested that state investigators had failed to timely provide the information to federal prosecutors. The district court "concluded without any difficultly" that, although the government's disclosure was somewhat tardy, it did not justify dismissal or sanctions.

§ 841 offense calls for a base offense level of 28 for an offense involving at least 112 but less than 196 grams of cocaine base. *Id.* § 2D1.1(c)(6). As stipulated in the plea agreement, Wallace was responsible for 186.44 grams of a mixture or substance containing cocaine base.

2) A three-level reduction for acceptance of responsibility and timely notification of intent to plead guilty. *Id.* § 3E1.1(a),(b).

Further, the probation officer summarized that Wallace reported having a history of substance abuse and a dysfunctional childhood because his mother introduced him to the drug trade in the Detroit-area when he was a teenager. The report also reflected that Wallace had a lengthy criminal history and was on parole at the time the instant offense was committed: he had two state-court drug offenses involving the sale of crack cocaine, a state-court offense of fleeing and eluding a police officer, several juvenile offenses, a drug-possession offense, two offenses of driving without a license, and a larceny arrest. He also had violated the terms of his state probation and stole items during a boot-camp program.

In his sentencing memorandum, Wallace stated that he did not object to the PSR's Guidelines calculation but sought a downward variance on the basis that a prison term below 96 months would be sufficient because the Guidelines calculation purportedly overestimated the weight of the crack cocaine, as the bag that he delivered to the undercover officer contained nine small pebbles of crack cocaine while the rest of the mixture was baking soda. Wallace, however, submitted no empirical analysis to confirm his characterization of the mixture. The government recommended a sentence of "at least" 60 months' imprisonment.

**D.**

At sentencing, the district court calculated Wallace's Guidelines range consistent with the PSR's scoring. The court confirmed that Wallace had read the PSR and had discussed it with

defense counsel, and that the defense had no objection to the scoring and sought only a variance.

After hearing Wallace's request to be sentenced within a range of 41 to 51 months' imprisonment,

the district court acknowledged the advisory nature of the Guidelines and took into account the 18

U.S.C. § 3553(a) sentencing factors, but rejected Wallace's variance request. The court imposed a

96-month prison term—the statutory maximum.[3] Defense counsel confirmed that Wallace had no

objections to the district court's sentencing pronouncement, aside from those arguments already

made. Wallace timely appealed.

## II.

### A.

We review a defendant's challenge to the reasonableness of his sentence for abuse of

discretion. *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007). A sentence must be

procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). Thus, we

> must first ensure that the district court committed no significant procedural error,
> such as failing to calculate (or improperly calculating) the Guidelines range, treating
> the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors,
> selecting a sentence based on clearly erroneous facts, or failing to adequately explain
> the chosen sentence—including an explanation for any deviation from the Guidelines
> range.

*Id.*

If "the district court's sentencing decision is procedurally sound," we "then consider the

substantive reasonableness of the sentence imposed . . . . When conducting this review, [we] will

. . . take into account the totality of the circumstances, including the extent of any variance from the

Guidelines range." *Id.* "A sentence is substantively unreasonable if the district court selects a

---

[3]Wallace does not challenge the non-imprisonment components of his sentence.

sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (quoting *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009)) (quotation marks omitted). We apply a rebuttable presumption of reasonableness to a sentence that falls within the advisory Guidelines range. *See United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

**B.**

The district court provided Wallace with a meaningful opportunity to object to its sentencing pronouncement, but he did not object. We thus review his alleged procedural defects for plain error. *See* Fed. R. Crim. P. 52(b); *Vonner*, 516 F.3d at 385–86. To establish that the district court committed plain error, Wallace must show "(1) error (2) that was plain, (3) that affected substantial rights and (4) that, if uncorrected, would 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Osborne*, 673 F.3d 508, 511 (6th Cir. 2012) (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)), *cert. denied*, 133 S. Ct. 205 (2012).

**1.** **Wallace's variance request**

Wallace argues that the district court committed procedural error by failing to meaningfully consider his request for a downward variance. He sought a variance on the ground that the PSR's Guidelines calculation overestimated the weight of the crack cocaine he delivered to the undercover officer and thus the severity of his crime. In arriving at a base offense level of 28 under U.S.S.G.

§ 2D1.1(c)(6), the guideline accounts for the entire weight of the substance he delivered to the officer—186.44 grams—even though the bag purportedly contained only a few grams of cocaine.

As the transcript reveals, the district court considered Wallace's variance request and "explained the basis for rejecting it," thus allowing for meaningful appellate review. *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (citation and quotation marks omitted). The district court understood its authority to vary from the Guidelines and reviewed the § 3553(a) factors by considering Wallace's history and characteristics; the circumstances of the offense; and the need for the sentence such as to promote respect for the law, deterrence, and protection of the public. The district court then rejected Wallace's variance request:

> So the question then that I've got to answer, obviously, is whether the [G]uidelines give an appropriate sentence, do they reflect, does it reflect the statutory factors? . . . I think in terms of the variance requested, based on the fact that it was mostly baking soda and not cocaine, I think that's a wash really. I don't think that it provides a valid ground to vary below the [G]uidelines. I really don't. Because I think there are just too many other potential dangers involved. And so I think that in this instance that counting everything in terms of the drug quantity is fair.

PID 413. As the district court explained just a few moments earlier, and as Wallace agreed, selling sham cocaine was no less dangerous than if he had sold actual cocaine because it is "not so uncommon" for drug purchasers to be armed.

Moreover, the district court committed no plain error by not specifically addressing Wallace's meritless contention that his variance request was supported by the Guidelines. *See United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009) ("A district court . . . is not obligated to review defendant's argument when it lacks any factual basis or legal merit."); *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) ("[A]rguments clearly without merit can, and for the sake of judicial

economy should, be passed over in silence." (citation and quotation marks omitted)). According to

Wallace, "[t]he Guidelines themselves indicate that, in a case like this, only the weight of the

controlled substance should count toward the Guidelines[] range." He points to application note one

of guideline 2D1.1, which provides:

> "Mixture or substance" as used in this guideline has the same meaning as in 21
> U.S.C. § 841, except as expressly provided. *Mixture or substance does not include
> materials that must be separated from the controlled substance before the controlled
> substance can be used.* Examples of such materials include the fiberglass in a
> cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste
> water from an illicit laboratory used to manufacture a controlled substance. If such
> material cannot readily be separated from the mixture or substance that appropriately
> is counted in the Drug Quantity Table, the court may use any reasonable method to
> approximate the weight of the mixture or substance to be counted.

U.S.S.G. § 2D1.1, appl. n.1 (emphasis added).

Wallace stipulated in his plea agreement that, for purposes of his Guidelines range, he was

responsible for the distribution of 186.44 grams of a mixture or substance containing cocaine base.

This resulted in a base offense level of 28 under guideline 2D1.1(c)(6). In his sentencing

memorandum and at the hearing, Wallace confirmed that he had no objection to the PSR's

Guidelines calculation. Although Wallace frames his argument under guideline 2D1.1's application

note one in terms of a variance request, his contention is nothing less than an attempt to attack the

PSR's Guidelines scoring.[4]

In any event, Wallace misconstrues guideline 2D1.1. When determining a defendant's base

offense level using the weight of the substance under guideline 2D1.1's drug quantity table, a court

---

[4]Wallace initially framed his contention as an objection to the PSR's Guidelines scoring, although he apparently withdrew such objection after the government warned that it violated the plea agreement.

must consider that, "[u]nless otherwise specified, the weight of a controlled substance set forth in the [drug quantity] table refers to *the entire weight* of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), n.(A) (emphasis added). Crack cocaine is not among those controlled substances otherwise specified. Further, under application note 1 of the guideline, "mixture or substance" has the same meaning as in 21 U.S.C. § 841. When Congress provided for mandatory-minimum sentences based on the weight of "a mixture or substance containing a detectable amount" of a controlled substance under § 841, it "adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." *Chapman v. United States*, 500 U.S. 453, 461 (1991) (citation omitted); *see id.* at 459–60 (explaining that, for "drugs like heroin and cocaine, . . . Congress clearly intended the dilutant, cutting agent, or carrier medium to be included in the weight of those drugs for sentencing purposes"). In applying the term "mixture or substance containing a detectable amount of the controlled substance" under guideline 2D1.1, we have rejected the argument that only pure cocaine counts toward the weight. *United States v. Williams*, 894 F.2d 208, 214–15 (6th Cir. 1990). Wallace cites no record evidence or authority for the notion that baking soda must be separated from the controlled substance before it can be used within the meaning of the guideline.

**2.      Wallace's difficult childhood**

Wallace also argues that the district court failed to adequately consider his difficult childhood as a potential mitigating factor. However, we presume absent "some affirmative indication in the record to the contrary" that the district court reviewed all of the relevant information about his

background, including the PSR and Wallace's sentencing memorandum. *Gale*, 468 F.3d at 941. At the sentencing hearing, defense counsel noted that she had discussed Wallace's difficult childhood in the sentencing memorandum. Then, in its sentencing pronouncement, the district court acknowledged that Wallace had "a seriously dysfunctional family history" but emphasized that Wallace had a long history of crime and drug use. It is thus apparent that the district court "was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *Vonner*, 516 F.3d at 387 (quoting *Rita v. United States*, 551 U.S. 338, 358 (2007)).

**3.      The government's case**

There is no merit to Wallace's assertion that the district court failed to take into account the "weakness" of the government's case as a mitigating factor. In his plea agreement, Wallace stipulated that he had agreed to sell drugs to the undercover officer and the delivered substance contained a detectable amount of cocaine base. The only dispute involves his purported lack of knowledge or intent to deliver actual drugs. The district court, however, considered that point and found that it did not weigh in favor of a lesser sentence in terms of whether he should be punished or whether he had respect for the law. Further, Wallace offers no support for his argument that the district court was required to sua sponte consider alleged "discovery violations" as a mitigating factor.

**4.      Alleged factual assumptions**

Wallace argues that the district court compounded its procedural errors by relying on false factual assumptions. "[A] court relies on clearly erroneous facts when the sentencing judge relies upon erroneous information and the information in question appears to have been an important factor

in determining the sentence." *United States v. Cunningham*, 669 F.3d 723, 730 (6th Cir. 2012) (citation and internal quotation marks omitted), *cert. denied*, 133 S. Ct. 366 (2012); *cf. United States v. Hreha*, 429 F. App'x 579 (6th Cir. 2011) (vacating sentence as procedurally unreasonable because the district court failed to adequately explain its decision to vary upward from the Guidelines range, appeared to base its sentence on theories unsupported by the record, and declined to allow the defendant to supplement the record to address the court's concerns).

Contrary to Wallace's argument, the district court did not assume that he was guilty of a greater crime but reasonably took into account that his plea bargain resulted in a sentence significantly less than what he could have expected if he had gone to trial on the drug charge that underlies the § 843(b) offense to which he entered the *Alford*-type guilty plea. Indeed, Wallace urged the magistrate judge to recommend that the district court accept his plea on the basis that he would receive the benefit of a lesser sentence. In response to the district court's inquiry at sentencing, defense counsel confirmed that the main factors behind the plea agreement were that a significant amount of the delivered substance was not cocaine base and that Wallace's post-arrest statements corroborated his position that he did not knowingly deliver cocaine. In announcing its sentence, the district court referenced this prior exchange, noting that the plea agreement reflected a "significant reduction . . . in terms of the seriousness of the offense and the penalty from the delivery charge"; the 96-month statutory maximum was significantly below what would otherwise have been the advisory Guidelines range; and the ways in which Wallace "attempt[ed] to minimize the seriousness of his behavior seem[ed] . . . to have already been taken into account in the benefits he got from his plea agreement negotiated by his lawyer." PID 410–11. Wallace cites no authority

for the notion that a district court commits procedural error in considering that a defendant has significantly benefitted from the plea process, particularly when the parties have a factual dispute in the *Alford* plea context.

Wallace next contends that the district court erred by making "false and unsupported factual assumptions about the potential harm in distributing a baggie of baking soda under the guise of crack." But the district court neither found that snorting or injecting baking soda might harm an unsuspecting buyer nor relied on any such finding as an important sentencing factor. Instead, in response to Wallace's argument that he did not intend to sell real drugs, the district court rhetorically asked whether Wallace considered "if [the substance] had all been baking soda or something else [and] if the buyer had been a drug user and attempted to use it, what consequence would that have had?" PID 412. The district court also questioned whether Wallace was showing more respect for the law—an appropriate § 3553(a) factor—by intending to defraud a potential buyer as opposed to selling real cocaine. The district court committed no plain error by pointing out the misguided nature of Wallace's conduct.

## 5.     The government's sentencing position

Because the district court provided sufficient reasons for the within-Guidelines sentence and why it rejected Wallace's variance request, the court was not obligated to specifically address whether a 60-month prison term (the minimum term urged by the government) would have been an appropriate sentence. *See Vonner*, 516 F.3d at 387 (explaining that a district court need not "give the reasons for rejecting any and all arguments by the parties for alternative sentences," nor must the court give "the specific reason" for a within-Guidelines sentence); *Gale*, 468 F.3d at 940 ("When

a district court adequately explains *why* it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the obverse—*why* an alternative sentence was *not* selected—in every instance.").

## C.

As to the substantive reasonableness of Wallace's sentence, the district court acted within its discretion in concluding that a 96-month prison term would be sufficient but not greater than necessary to comply with the purposes of § 3553(a). First, Wallace argues that he was entitled to a variance on the basis that the bulk of the delivered substance was not pure cocaine, but his argument fails to rebut the presumptive reasonableness of his within-Guidelines sentence. *See Vonner*, 516 F.3d at 389–90. Although not explicitly framed in such terms, his assertion amounts to little more than a policy disagreement with guideline 2D1.1, under which he was accountable for the entire weight of the substance. The district court was not required to vary from the Guidelines based on the notion that only the weight of the pure drug should count toward his sentencing determination. *See United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011) ("[T]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees."), *cert. denied*, 131 S. Ct. 3077 (2011). Also, the district court permissibly determined that the dangers associated with the illegal drug trade justified counting the entire weight of the substance, notwithstanding Wallace's alleged intent to sell only sham cocaine, or that the amount of actual cocaine may have been less than is normally found.

Wallace's reliance on *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), is misplaced. In *Dorvee*, the Second Circuit held that a statutory-maximum 240-month prison term for a first-time offender who pleaded guilty to distribution of child pornography was procedurally and substantively unreasonable. *See* 616 F.3d at 176, 188. In reaching this conclusion, our sister circuit cautioned that district courts, when determining sentences for child pornography offenders, must be careful not to impose sentences that do not conform with the § 3553(a) factors. *Id.* at 184–88. The court was also troubled by the district court's imposition of the statutory maximum because the district court: (1) apparently assumed that the defendant was a "pedophile" and "was likely to actually sexually assault a child, a view unsupported by the record evidence" given that the defendant presented expert testimony to the contrary, *id.* at 183; (2) offered only a "cursory explanation of its deterrence rationale," *id.* at 184; and (3) incorrectly stated that its sentence was "relatively far below" an improperly-calculated Guidelines range, *id.* (internal quotation marks omitted). The only similarity between *Dorvee* and this case is that Wallace also received a statutory-maximum prison term. *Dorvee* did not involve distribution of a controlled substance, the offense underlying Wallace's § 843(b) conviction. Moreover, unlike *Dorvee*, the district court's sentencing decision here did not rest on unsupported factual assumptions or an improperly calculated Guidelines range. Wallace is not a first-time drug offender and he presented no evidence that he was unlikely to sell drugs in the future.

Second, as already addressed with respect to the procedural reasonableness of Wallace's sentence, the district court did not base its sentencing decision on false assumptions about the dangers of selling counterfeit drugs. Third, the record does not reflect that the district court simply

assumed that the benefit Wallace received in pleading to the instant offense reflected any warranted reduction in his sentence. Rather, the district court acknowledged that Wallace's attempts to minimize the seriousness of his behavior had been taken into account during the plea process and went on to address the appropriate sentencing factors. In the context of an *Alford*-type guilty plea where the defendant refuses to admit all the elements of the crime, the district court acted within its discretion in concluding that any issue about Wallace's lack of knowledge or intent to sell real drugs had been accounted for during the plea negotiations, particularly given defense counsel's representation to that effect.

Last, concerning Wallace's difficult childhood, we have "explained that regular, recurring circumstances need not be discussed by a judge each and every time they are raised by a criminal defendant, especially in the absence of some further development suggesting an exceptional hardship." *United States v. Collier*, No. 11-2376, 2012 WL 5907499, at *4 (6th Cir. Nov. 27, 2012) (unpublished) (citation omitted). "Unfortunately, troubled childhoods plague many criminal defendants" and is one of those recurring circumstances that need not be discussed by the district court in every case, particularly when the defendant fails to present evidence suggesting "an arguably meritorious claim for a lesser sentence based on his difficult childhood." *Id.* (citation omitted). Even were we to credit Wallace's assertion that his difficult childhood stands out as noteworthy compared to other defendants, the district court acted within its discretion in concluding that this factor was outweighed by his lengthy criminal history.

### III.

For the foregoing reasons, we AFFIRM Wallace's judgment of conviction.